# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **REGINA HARRIS**,<br>  Plaintiff,<br>v.<br>**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY**,<br>  Defendant. | Case No. 4:15-cv-01312-YGR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 20 |

Plaintiff Regina Harris filed this action seeking judicial review of Social Security Administration Administrative Law Judge ("ALJ") Dickie Montemayor's decision finding she was not disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act"). Pending before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 15, 20.) plaintiff argues the ALJ erred by: (1) improperly discounting the credibility of plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain; and (2) failing to provide specific and legitimate reasons supported by substantial evidence when discounting the opinion of her treating physician Dr. Kay Yatabe. Based thereon, plaintiff argues that remand to the ALJ for further proceedings is proper.

Having carefully considered the papers submitted and the record in this case, and for the reasons set forth below, plaintiff's motion and the Commissioner's cross motion are both **GRANTED IN PART**. As set forth herein, the Court denies plaintiff's motion with respect to credibility issues but grants plaintiff's motion with respect to the opinion of Dr. Kay Yatabe. Accordingly, the action is **REMANDED** to the ALJ for further proceedings consistent herewith.

## I.   BACKGROUND

On October 21, 2011 plaintiff applied for Supplemental Security Income disability benefits, alleging that she became disabled on September 1, 2006, and on October 24, 2011,

1    plaintiff filed an application for Social Security Disability Insurance pursuant to Title II of the Act.
2    (Record at 220, 212.)  She later amended her disability onset date to October 1, 2009.[1]  (*Id.* at 39.)
3    Plaintiff based her disability claim primarily on a history of severe musculoskeletal pain
4    symptoms in her back, knees, ankles, and feet.  (*Id.* at 23, 40, 231.)

The Social Security Administration denied plaintiff's application initially and on
reconsideration.  (*Id.* at 124, 129.)  Plaintiff requested a hearing before an ALJ, which was held on
September 24, 2013.  (*Id.* at 26.)  On October 22, 2013, the ALJ issued his final decision finding
that plaintiff was not disabled within the meaning of the Act.  (*Id.*)  Plaintiff appealed the ALJ's
decision to the Appeals Council, which denied her request for review, rendering the ALJ's
decision final.  (*Id.* at 1.)  Plaintiff then filed the instant action, which became ripe for decision on
April 2, 2016.  (*See* Dkt. No. 23.)

**II.    LEGAL STANDARD**

This Court has jurisdiction under 42 U.S.C. section 405(g).  The Court may reverse the
ALJ's decision only if it "contains legal error or is not supported by substantial evidence."  *Orn v.
Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d
676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).  It is
"more than a mere scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211,
1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  Where the
evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ.
*Burch*, 400 F.3d at 679.

The Act uses a five-step sequential framework to determine whether a claimant is disabled.
At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 404.1520(b).  A person is involved in substantial work activity if she
engages in work that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).

---

[1] Plaintiff amended her onset date to October 1, 2009 during the hearing before the ALJ. (Record at 39-40.)  The ALJ's decision (*id.* at 19) and the parties' briefing (*see* Dkt. No. 15 at 6:15-16; Dkt. No. 20 at 5:15-16) improperly reflect an amended onset date of October 1, 2008.

2

Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the RFC to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. § 404.1520(g).

"Substantial work activity is work activity that involves doing significant physical or mental activities. . .[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 16.972(a). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work and fulfills the duration requirement, she is disabled. In any action brought by or against the United States, the Equal Access to Justice Act ("EAJA") requires that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### III.   THE ALJ'S DECISION

In an eight-page decision, the ALJ applied the five-step sequential analysis described above to determine plaintiff was not eligible for disability insurance benefits. The ALJ concluded that plaintiff was not disabled under 216(i) and 223(d) of the Act during the relevant time period. A summary of his decision follows below.

At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity since October 1, 2008, and meets the insured status requirement of the Act through September 30, 2010. (Record at 21.)

At Step Two, the ALJ determined that plaintiff "has the following severe impairments: degenerate joint disease of the knees; history of left ankle sprain; plantar fasciitis; obesity; and thoracic degenerative disc disease." (*Id.*) The ALJ further found plaintiff to suffer from other nonsevere impairments including: "chest pain, hypertension, abdominal pain, left shoulder pain, and depressive disorder." (*Id.*)

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the criteria of listings in 20 C.F.R. 404, Subpart P, Appendix 1. In concluding the same, the ALJ summarily stated that plaintiff's severe impairments were not "attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." (*Id.* at 22.)

Before reaching Step Four, the ALJ determined plaintiff's RFC. Plaintiff's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, despite any limitations from her impairment. The ALJ determined that plaintiff retained the capacity to perform "light work." (*Id.*) In reaching this decision, the ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (*Id.* at 23.) The ALJ found that "objective diagnostic studies, treatment notes and clinical findings [did] not support her alleged symptoms and limitations." (*Id.*) In holding that that plaintiff's testimony was not credible, the ALJ pointed to several diagnostic reports that revealed "no acute findings." (*Id.*) The ALJ specifically referred to treating physician notes, x-rays, and reports from visits plaintiff made to doctor's offices and hospitals.

In discounting plaintiff's testimony, the ALJ also relied on the findings made by Dr. Flanagan, the consultative orthopedic evaluator, who found that plaintiff had "an essentially normal clinical examination with normal gait, no muscle spasm, normal motor strength, normal range of motion in the knees, negative straight leg raising and no focal neurological deficits." (*Id.* at 23.) Additionally, the ALJ pointed to the "intermittent conservative treatment" that plaintiff has received for her condition as a reason for discounting her credibility. For example, the ALJ noted plaintiff had been reluctant to participate in physical therapy and had missed or cancelled numerous appointments. (*Id.* at 24.)

Finally, the ALJ pointed to numerous other factors which, in his view, undermined plaintiff's credibility. For example, the ALJ noted that although plaintiff initially alleged disability beginning on September 1, 2006, she continued to work until October 2008 and only stopped working when she was terminated from her employment. (*Id.* at 24.) He also pointed to the fact, that despite plaintiff's claim that "she is only able to walk a half of a block without resting or she can lift no more than 5 pounds," plaintiff's activities demonstrate her actual functioning. (*Id.*) For example, in 2012, plaintiff was "living alone and was able to care for her personal needs, do household chores, do laundry, care for her cat, go out alone, shop, prepare meals, visit her friend and take public transportation." (*Id.*)

In finding that plaintiff had an RFC to perform "light work," the ALJ afforded the opinion

of plaintiff's treating physician Dr. Yatabe "little weight." (*Id.*)  The ALJ listed five reasons for discounting the opinion of the treating physician: "[1] it was based on the claimant's subjective complaints; [2] objective diagnostic evidence does not support such drastic limitation; [3] clinical findings are inconsistent with her opinion; [4] treatment notes do not document similar limitations, and [5] the claimant's activities contradict her opinion."  (*Id.*)

Having made the RFC determination, the ALJ proceeded to Step Four to determine that plaintiff ultimately did have the RFC to perform her past relevant work as an office clerk.  In making this determination, the ALJ credited the testimony of the vocational expert and considered the claimant's RFC, age, education, and work experience.  (*Id.* at 25-26.)

At Step Five, the ALJ concluded that plaintiff was not under a disability, as the Act defines that term, from October 1, 2008 through the date of his decision.  (*Id.* at 26.)

## IV. DISCUSSION

Plaintiff argues the ALJ erred by: (A) improperly discounting plaintiff's credibility with respect to her allegations regarding the intensity, persistence, and limiting effects of her pain; and (B) failing to provide specific and legitimate reasons supported by substantial evidence when deciding to afford the opinion of treating physician Dr. Kay Yatabe "little weight."  Based thereon, plaintiff argues that remand to the ALJ for further proceedings is proper.

In opposition, the Commissioner argues that the ALJ properly evaluated plaintiff's credibility and gave specific and legitimate reasons to afford the treating physician's opinion "little weight."  The Commissioner, who seeks affirmation of the ALJ's decision, maintains that the ALJ's determination was supported by substantial evidence and is free of reversible error.  The Court considers the two issues addressed by the parties in turn.

### A. Credibility of Plaintiff's Testimony

In an exertion questionnaire completed in January 2012, plaintiff reported that she was unable to work and limited in the activities that she was able to perform at home as a result of pain that she experienced.  (Record at 281.)  Plaintiff indicated that her knees would "hurt really bad walking up stairs," she had difficulty mopping the floor because her "back and knees hurt and [she] had] to keep stopping," and that she had trouble washing dishes because her "back and knees

hurt." (*Id.*) Plaintiff also reported this pain to her treating physician, Dr. Yatabe. Dr. Yatabe's notes reflect plaintiff's report that she had "terrible back pain and knee pain" and a "burning pain bottom of heel R when walks." (*Id.* at 391, 395.) Plaintiff argues the ALJ improperly ignored her reports of pain and incorrectly found that her reports of pain were "not entirely credible." (*Id.* at 23.) Upon review of the record and the ALJ's decision, and for the reasons set forth below, the Court finds the ALJ's determination that plaintiff was not entirely credible was sufficiently supported by the record as set out in the specific, clear, and convincing reasons by the ALJ.[2]

### 1. Legal Standard

To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* Second, if the claimant provides the evidence required by step one, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1283–84).

An ALJ "may find the claimant's allegations of severity to be not credible," but the ALJ "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947

---

[2] The Commissioner argues that the ALJ did not need to provide clear and convincing reasons to discount Plaintiff's statements. The Court does not reach this argument because it finds that the ALJ provided sufficiently clear and convincing reasons for discounting Plaintiff's testimony, affirming this aspect of the ALJ's decision under a more stringent standard than that proposed by the Commissioner. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (holding that an ALJ must provide clear and convincing reasons to discount a claimant's subjective testimony where there is no affirmative evidence or malingering).

F.2d at 345 (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).  But "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the reviewing court "may not engage in second guessing."  (*Id.* at 959.)

### 2. Analysis

Plaintiff argues that the ALJ improperly ignored her reports of pain and failed to provide specific, clear, and convincing reasons for partially discrediting her testimony.  The parties do not contest that the ALJ properly engaged in the two-step inquiry prescribed by *Tommasetti* for credibility determinations of subjective testimony nor do they dispute the sufficiency of the ALJ's analysis at step one.  *See* 533 F.3d at 1039.  (Record at 22.)

Rather, the parties' dispute focuses on the sufficiency of the ALJ's analysis at step two, when the ALJ determined that plaintiff's pain was not as limiting, persistent, or intense as she alleged.  At step two, the ALJ began by summarizing plaintiff's medical treatment history from July 2009 to February 2013. (*See id.*)  This summary indicated that although plaintiff alleged a history of musculoskeletal pain, the objective diagnostic evidence revealed no "acute findings." (*See id.* at 23.)  Specifically, the ALJ reasoned:

> Despite an alleged history of musculoskeletal pain symptoms since 2001, objective diagnostic studies revealed no acute findings. (Exhibit 1F-2F)  The September 2010 x-ray study of the spine revealed an unremarkable lumbar spine and degenerative disc space narrowing at T11-T12 with associated osteophytes projected from the vertebral endplates, but there was no evidence of stenosis or nerve root impingement.  (Exhibit 5F/11)  The July 2009 x-ray studies of the knees revealed no acute findings, and the March 2012 studies revealed only mild degenerative joint disease.  (Exhibit 5F/8, 10, 14F, 17F)  The September 2010 x-ray study and the 2011 MRI scan of the left ankle were unremarkable.  (Exhibit 5F/8-9)  The January 2013 x-ray study of the left heel was unremarkable except for a small calcaneal osteophyte at the plantar aponeurosis.  (Exhibit 14F/3, 17F/5)

(*Id.* at 23.)  The Court finds that the ALJ specifically stated the testimony he found not to be credible and pointed to the facts in the record on which he relied when reaching his conclusion.

*See Smolen*, 80 F.3d at 1284.

While the record reflects that plaintiff has ongoing pain, the ALJ's determination that plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain are "not entirely credible" is supported by substantial evidence. The ALJ provides four distinct reasons in support of his determination that plaintiff's allegations are "not entirely credible:" (1) objective diagnostic studies, treatment notes, and clinical findings do not support plaintiff's alleged symptoms; (2) plaintiff's testimony regarding her limitations are not supported by the record; (3) plaintiff has only received intermittent conservative treatment; and (4) plaintiff's daily activities demonstrate her actual functioning. (Record at 22-24.) As discussed below, the Court agrees with respect to each.

First, the ALJ found that objective medical evidence diminished the credibility of plaintiff's allegation regarding the severity of her pain. Although plaintiff complained of severe musculoskeletal pain, objective diagnostic studies did not reveal any "acute findings." (*Id.* at 23.) All of Plaintiff's MRIs and x-rays showed mild or no abnormalities. (*See, e.g.*, *id.* at 393 (MRI revealed that left ankle was "unremarkable"); *id.* at 444 (x-ray of bilateral knees showed "mild DJD [degenerative joint disease]"); *id.* at 447 (x-ray of lumbar spine revealed disc narrowing at T11-T12, but otherwise "unremarkable")). Additionally, every physician except for Dr. Yatabe agreed that plaintiff can perform light work. (*See id.* at 80-82, 104-05, 433.) Physical examinations of plaintiff have also revealed that plaintiff has a normal gait, normal range of motion, and no edema. (*Id.* at 431, 511, 605, 633, 652.) Thus, while there is no dispute that plaintiff suffers from pain as a result of her impairment, the record supports the ALJ's determination that her symptoms are not as intense or limiting as she suggests.

Second, the ALJ concluded that plaintiff has made several statements that are inconsistent with her conduct. (*Id.* at 24.). When evaluating a plaintiff's credibility, an ALJ "may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Here, plaintiff claimed at the hearing that she uses a cane and requires knee replacement surgery; however, the record does not support these assertions. (Record at 24.) Plaintiff left her cane in the car when appearing before

the ALJ and "presented at the orthopedic consultative examination without an assistive device and exhibited a normal gait." (*Id.* at 23 (citing *id.* at 55, 431).) Moreover, plaintiff testified that she was told she needed knee replacement surgery although no medical records reflect any physician indicating that plaintiff requires knee replacement surgery.

Third, the ALJ determined that while plaintiff alleges that she has severe and debilitating pain, she has only received "conservative treatment" and has repeatedly failed to follow the treatments prescribed by her physician. (*Id.* at 24.) When making a credibility determination, an ALJ may consider a claimant's failure to seek treatment or comply with a treatment regime. *See Tommasetti*, 533 F.3d at 1039 (the ALJ properly reasoned "that [the claimant's] pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program"); *see also Orn*, 495 F.3d at 638 ("if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.") Here, plaintiff has cancelled or failed to appear at numerous physical therapy appointments because she "didn't think it would help." (Record at 391, 397, 473.) The ALJ also noted that Dr. Yatabe reported that plaintiff has a "history of noncompliance with medical treatment." (*Id.* at 501.)

Lastly, the ALJ found that plaintiff's daily activities are a reflection of her actual functioning and are inconsistent with her statements regarding the severity of the pain that she experiences. (*Id.* at 24.) When assessing a plaintiff's claims regarding the intensity of pain, an ALJ may consider a plaintiff's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3), (3)(i), 416.929(c)(3), (3)(i) (in assessing credibility, the agency considers "information about your prior work record" and your daily activities). The Ninth Circuit has found that a claimant's allegation of disability can be undermined by evidence of her daily activities. *See Rollins*, 261 F.3d 853, 857 (9th Cir. 2001) (finding that claimant's allegation were undermined by her daily activities which included cooking, housekeeping, caring for others, and attending therapy sessions.) Here, despite plaintiff's claims of debilitating pain, plaintiff cares for her cat, is able to prepare meals, do laundry, visit her friends, and take public transportation. (*See Id.* at 283-89.)

In support of her motion, plaintiff simply argues that the ALJ committed legal error by ignoring many of her reports of pain to her treating physicians. However, plaintiff fundamentally fails to provide any support for her claim that the ALJ improperly ignored any reports of pain. An ALJ "may find the claimant's allegations of severity to be not credible" if the ALJ "specifically make[s] findings which support this conclusion." *Bunnell*, 947 F.2d at 345. As discussed above, the ALJ made specific findings and pointed to particular places in the record that support his conclusion that plaintiff is not entirely credible. In discounting plaintiff's credibility, the ALJ appropriately considered diagnostic evidence, contradictions between plaintiff's testimony regarding her limitations and the record, plaintiff's receipt of only intermittent conservative treatment, and plaintiff's daily activities that demonstrated her actual functioning.

For these reasons, the ALJ's determination that plaintiff lacked credibility was sufficiently supported by the specific, clear, and convincing reasons. Any inferences that the ALJ drew against plaintiff were reasonably drawn from the record, which he frequently and accurately cited. The Commissioner's motion on this ground is **GRANTED.**

### B. Discounting the Opinion of Physician Dr. Yatabe

Next, plaintiff argues that the Court should remand to the ALJ because his decision improperly gave Dr. Yatabe's opinion "little weight." More particularly, plaintiff argues that the ALJ's decision to discount Dr. Yatabe's opinion was not supported by substantial evidence. The Court agrees. The ALJ failed to "do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). He did not set out the required "detailed and thorough summary of the facts and conflicting clinical evidence, [along with] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

For the reasons discussed below, the Court **GRANTS** plaintiff's motion on this ground.

#### 1. Legal Standard

In determining whether a claimant is disabled within the meaning of the Act, the ALJ must consider all medical opinion evidence. *Tomasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the

11

opinions of treating physicians generally accorded the most weight. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are three types of medical opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than opinions of examining physicians). The rationale for giving greater weight to a treating physician's opinion is that he or she is "employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). However, an "ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To reject a treating doctor's opinion, that is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (internal quotation marks omitted). An ALJ can satisfy this requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight. . .even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 633).

### 2. Analysis

Plaintiff argues that the decision should be remanded to the ALJ because he improperly gave little weight to the opinion of plaintiff's treating physician. The ALJ gave little weight to Dr. Yatabe's opinion that plaintiff "was essentially bedridden as she was limited to sitting 2 hours in an 8-hour day and precluded from standing, walking, lifting or carrying." (Record at 24.) The ALJ's discussion of Dr. Yatabe's opinion and his reasons for discounting it were conclusory rather than specific and legitimate. Specifically, the ALJ summarily stated that "[t]he opinion of Dr.

Yatabe is given little weight for the following reasons: it was based on the claimant's subjective complaints; objective diagnostic evidence does not support such drastic limitations; clinical findings are inconsistent with her opinion; treatment notes do not document similar limitations; and the claimant's activities contradict her opinion." (*Id.* at 24.)  These are not the types of "specific and legitimate" reasons necessary to reject a treating physician's opinion.

Dr. Yatabe's treatment notes and other diagnostic reports provide evidence that could support the ALJ's determination that Dr. Yatabe's opinion was inconsistent with clinical findings, treatment notes, and plaintiff's daily activities.  For example, the record demonstrates that all of plaintiff's MRIs and x-rays have only shown mild or no abnormalities. (*See, e.g., id* at 393 (MRI revealed that left ankle was "unremarkable); *id* at 444 (x-ray of bilateral knees showed "mild DJD [degenerative joint disease]"); *id* at 447 (x-ray of lumbar spine revealed disc narrowing at T11-T12, but otherwise "unremarkable")).  Physical examinations of plaintiff also revealed that she has a normal gait, normal range of motion, and no edema. (*Id.* at 431, 511, 605, 633, 652).

While Dr. Yatabe's treatment notes provide some support for the ALJ's stated reasons for giving little weight to Dr. Yatabe's opinion on the limiting effects of plaintiff's symptoms, the ALJ's conclusion suffers from a lack of explicit, necessary analysis and interpretation of the record.  The ALJ does not specifically relate any of the information summarized above to his ultimate finding to give "little weight" to Dr. Yatabe's opinion.  Although one could speculate as to the import of the information recounted above, the Court cannot affirm the ALJ on a ground upon which he did not rely.  *See Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  While the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," it may do so only "if those inferences are there to be drawn." *Magallanes*, 881 F.2d at 755.

Here, the ALJ failed to explain in sufficient detail the specific conflicts he saw in the record and how those conflicts led him to his ultimate decision on the amount of weight to give to Dr. Yatabe's opinion.  Although the ALJ set out a detailed and thorough summary of the facts, he failed to state the conflicting clinical evidence specifically, and his interpretation of it; nor did he explicitly state the findings he made that led him to his ultimate conclusion on the weight to

accord Dr. Yatabe's opinion.  *See Reddick*, 157 F.3d at 725.  As such, the Court finds that the ALJ did not provide the requisite specific and legitimate reasons for giving "little weight" to the opinion of treating physician Dr. Yatabe.  Consequently, plaintiff's motion is **GRANTED** with respect to treating physician Dr. Yatabe.

V. **CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** and the Commissioner's cross motion for summary judgment is **GRANTED IN PART**.  This action is hereby **REMANDED** to the ALJ for further proceedings consistent with this Order.  Judgment will be entered accordingly.

This Order terminates Docket Numbers 15, 20.

**IT IS SO ORDERED.**

Dated: May 6, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**